UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EVERGREEN POWER, LLC and : | |
| ASNAT REALTY, LLC, : | |
|     Plaintiffs, : | |
| : | |
| v.       : | 3:14-cv-01537-WWE |
| : | |
| UNITED STATES OF AMERICA, : | |
| COAST GUARD, and : | |
| EJ CUBANSKI, III, : | |
|     Defendants. : | |

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

In this action, plaintiffs seek relief from an administrative order based on the threat of discharge of petroleum from real property located at 510 Grand Avenue, New Haven, Connecticut.  Specifically, plaintiffs request an order declaring that they are not owners or operators of the alleged source of threatened or actual release claimed by the government.

The United States has filed a counterclaim to recover removal costs arising from the alleged discharge or threat of discharges of oil into navigable waters.

Defendants have moved for judgment on the pleadings as to plaintiffs' claims.  For the following reasons, defendants' motion will be granted.

## BACKGROUND

The following background is taken from the allegations of plaintiffs' complaint, which are accepted as true for purposes of this decision.

United Illuminating Company ("UI") operated an electric power plant known as "English Station" on the island property located at 510 Grand Avenue from 1929 to 1992.  Pursuant to contracts and land easements, UI has continuously maintained electric transmission and

associated equipment on the site. In 1992, English Station was placed on deactivated status.

English Station was constructed on a man-made island in the Mill River located south of Grand Avenue in New Haven. The island is constructed of dredge spoils, ash, debris, and other anthropogenic fill materials. UI's activities on the site involved the use and storage of equipment and petroleum oil, as well as other various pollutants including total petroleum hydrocarbons.

Between 1975 and 1997, UI filed a number of spill reports with the Commissioner of the Connecticut Department of Environmental Protection, now known as the Department of Energy and Environmental Protection ("CT DEEP"). Several of these spill reports indicate oily sheens discharging to the adjacent Mill River from the site. On December 8, 1997, while excavating the site, UI employees discovered an oily material on the groundwater table at the site, which later broke out through a rotted bulkhead and spilled into the Mill River.

In March 1988, UI submitted a subsurface investigation remediation plan to CT DEEP. This report documented the visual presence of non-aqueous phase liquids on the groundwater. An environmental consulting firm's May 1998 report documented UI's history of oil and PCB spills onto the soil, groundwater, and surface water, which had occurred on the site since at least 1975.

On August 16, 2000, UI transferred the site to Quinnipiac Energy, LLC, but reserved certain rights of easement to maintain and operate UI's transmission facilities associated with English Station.

At some point prior to December 9, 2006, the site was divided into two parcels: Parcel A and Parcel B. Parcel A is on the northern portion of the site along Grand Avenue and includes a warehouse building. Parcel B is on the southern portion of the site and includes the former

power generation building.

On December 9, 2006, Quinnipiac transferred Parcel A to Evergreen.  On December 13, 2006, Quinnipiac transferred Parcel B to Asnat.

**The Order**

On September 19, 2014, EJ Cubanski, III, Captain, United States Coast Guard, caused administrative order #002-14 to be issued to plaintiffs and UI regarding the threat of a potential discharge of petroleum from 510 Grand Avenue.  The order was based solely upon the purported visual identification of an oily sheen on the waters of the Mill River in the vicinity of English Station.  Parcel B was the source of the alleged release.

The order demanded that Evergreen and Asnat develop a plan to control, contain, and recover any discharges of oil from the property, to be submitted within 5 days.  The order gave plaintiffs another eleven days develop and submit a plan to abate pollution in the future.

Plaintiffs appealed to the Coast Guard to reconsider the order within 24 hours of its issuance, but reconsideration was denied on September 23, 2014.  This action followed.

Plaintiffs request declaratory judgment that:

"(a) Evergreen and Asnat are not an owner or operator of the alleged source of threatened or actual release claimed by the United States.

(b) Defendant's order is invalid as to both Evergreen and Asnat as it was issued many years after any oily sheens began such that the statute of limitations has run or in the alternative that the delay in enforcement was arbitrary and constitutes laches to the detriment and prejudice of Evergreen and Asnat in that other parties responsible for the alleged release have been allowed to disappear or deny responsibility.

(c) Defendant's order was based on insufficient information upon which to hold Evergreen and/or Asnat responsible in that the source of the release, the oily sheen, had many potential sources which were not explored, defined or eliminated.

(d) Defendant, United States, by and through it agents, the United States Environmental Protection Agency, the United States Coast Guard and the Connecticut Department of Energy and Environmental Protection as Defendant's delegated authority for enforcement under the Clean Water Act each knew or should have known about various releases and threatened into the Mill River for decades but failed to act to enforce the laws against parties who bear direct responsibility for the releases to Evergreen and Asnat's prejudice and thus are equitably estopped from enforcing the order."

## DISCUSSION

Defendants argue that plaintiffs have failed to properly plead subject matter jurisdiction over the claims in the complaint, as the statutory provision upon which they rely does not waive federal sovereign immunity. Indeed, waiver of the government's sovereign immunity must be unequivocal, and waivers must be construed strictly in favor of the government. U.S. Dept. Of Energy v. Ohio, 503 U.S. 607, 615 (1992).

"Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990). "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

Plaintiffs assert jurisdiction pursuant to 33 U.S.C. § 1321(e)(2). Section 1321(e) provides:

(e) Civil enforcement

(1) Orders protecting public health
   In addition to any action taken by a State or local government, when the President determines that there may be an imminent and substantial threat to the public

> health or welfare of the United States, including fish, shellfish, and wildlife, public and private property, shorelines, beaches, habitat, and other living and nonliving natural resources under the jurisdiction or control of the United States, because of an actual or threatened discharge of oil or a hazardous substance from a vessel or facility in violation of subsection (b) of this section, the President may--
>
> (A) require the Attorney General to secure any relief from any person, including the owner or operator of the vessel or facility, as may be necessary to abate such endangerment; or
>
> (B) after notice to the affected State, take any other action under this section, including issuing administrative orders, that may be necessary to protect the public health and welfare.
>
> (2) Jurisdiction of district courts
>> The district courts of the United States shall have jurisdiction to grant any relief under this subsection that the public interest and the equities of the case may require.

Plaintiffs argue that Section 1321(e)(2)'s "any relief" language grants district courts the authority to review agency action that forces individuals to engage in complex environmental remediation. Specifically, plaintiffs contend:

> The subsection is not limited. It is broad and flowing, as most attorneys, courts and legal scholars understand equity to be. In addition, the Government's assertion that this section only allows the agency to issue orders and enforce them, but does not allow the Court to review those orders by declaratory judgment asserts a harsh and distinctly inequitable statutory world which does not in fact exist. What else could Congress have meant but that the district court has the authority to grant "any relief".

The Court is not persuaded. Section 1321(e)(2) provides district courts with jurisdiction to grant relief under *this* subsection. Subsection (e) comprises the President's authority to react to imminent and substantial threats to the public health or welfare; its purpose is to give the President the power to remove oil and hazardous substances from the water and shorelines of the United States. Subsection (e)(2)'s use of the word "equities" does not provide alleged dischargers of hazardous substances with the limitless ability to challenge the President's efforts

5

to protect the public health and welfare.

First, Clean Water Act ("CWA") subsection 311(b)(7)(A) authorizes the Coast Guard to seek civil judicial penalties from "[a]ny person who is the owner, operator, or person in charge of any . . . onshore facility . . . from which oil or a hazardous substances is discharged" into or upon the navigable waters of the United States or adjoining shorelines in such quantities as may be harmful. 33 U.S.C. § 1321(b)(7)(A).

Second, CWA subsection 311(b)(7)(B) authorizes the Coast Guard to seek civil judicial penalties against "any person who is the owner, operator, or person in charge of any [such] . . . onshore facility" who, without sufficient cause, "(I) fails to properly carry out removal of the discharge under an order [pursuant to CWA section 311(c)]; or (ii) fails to comply with an order pursuant to [CWA section (e)(1)(B).]" 33 U.S.C. § 1321(7)(B).

Finally, CWA subsection 311(b)(6)(G) provides guidance for obtaining judicial review:

(G) Judicial review

Any person against whom a civil penalty is assessed under this paragraph or who commented on the proposed assessment of such penalty in accordance with subparagraph (C) may obtain review of such assessment–

> (I) in the case of assessment of a class I civil penalty, in the United States District Court for the District of Columbia or in the district in which the violation is alleged to have occurred, or

> (ii) in the case of assessment of a class II civil penalty, in United States Court of Appeals for the District of Columbia Circuit or for any other circuit in which such person resides or transacts business,

> by filing a notice of appeal in such court within the 30-day period beginning on the date the civil penalty order is issued and by simultaneously sending a copy of such notice by certified mail to the Administrator or Secretary, as the case may be, and the Attorney General. The Administrator or Secretary shall promptly file in such court a certified

>copy of the record on which the order was issued. Such court shall not set aside or remand such order unless there is not substantial evidence in the record, taken as a whole, to support the finding of a violation or unless the Administrator's or Secretary's assessment of the penalty constitutes an abuse of discretion and shall not impose additional civil penalties for the same violation unless the Administrator's or Secretary's assessment of the penalty constitutes an abuse of discretion.

Plaintiff' argument, that Section 1321(e)(2)'s "any relief" language grants district courts the authority to review, mid-stream, any agency action taken by the President as necessary to protect the public health and welfare, would render subsection 311(b)(6)(G)'s judicial review section superfluous.  Defendants point out that, with hazardous substances, immediate action is often required to prevent significant harm to the environment.  Such action is at odds with the threat of inevitable delays caused by judicial challenges.  Finally, plaintiffs have other avenues to avoid liability.  CWA subsection 311(b)(7)(B) expressly provides a "sufficient cause" defense to the imposition of a civil penalty for violating orders issued under subsection 311(e).  Moreover, a person who complies with such orders may recover its costs under the Oil Pollution Act, pursuant to 33 U.S.C. § 2708, by demonstrating that it is not liable or that liability should be limited.

33 U.S.C. § 1321(e)(2) does not grant the Court subject matter jurisdiction over plaintiffs' claims, as it does not unequivocally waive the government's sovereign immunity.  Accordingly, defendants' motion for judgment on the pleadings will be granted.

Plaintiffs' response to defendants' motion for judgment on the pleadings contends, in the alternative, that the Administrative Procedures Act, 5 U.S.C. § 704, allows review of the government's order.  However, a facial attack on subject matter jurisdiction requires the court to look to whether plaintiffs have sufficiently alleged a basis for subject matter jurisdiction.  See

Russo v. City of Hartford, 184 F. Supp. 2d 169, 178 (D. Conn. 2002). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000). Here, plaintiffs have not sufficiently alleged jurisdiction pursuant to the APA, but plaintiffs will be permitted to amend their complaint to allege such jurisdiction. Alternatively, defendants counterclaim to recover removal costs arising from the alleged discharge of oil may adequately resolve the issue of the validity of the orders issued to plaintiffs in this case.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings is GRANTED.

Plaintiffs may amend their complaint to allege jurisdiction pursuant to the APA within 14 days of the issuance of this decision.

Dated this 30th day of July, 2015, at Bridgeport, Connecticut.

    /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE